IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:24-CR-000155 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| THOMAS TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | **(Evidentiary Hearing Requested)** |

_____

## MOTION TO SUPPRESS
_____

Now comes Defendant Thomas Taylor, by and through the undersigned counsel, and hereby respectfully moves this Honorable Court for an order suppressing, and excluding any reference thereto during any hearing in this case, all evidence seized by law enforcement on or about April 1, 2024 in the course of their searches of 3236 East 134th Street, Cleveland, Ohio 44120; 10916 Dove Avenue, Cleveland, Ohio 44120; 17415 Stockbridge Avenue, Cleveland, Ohio 44128; and 10106 Ridgewood Drive, Twinsburg, Ohio 44087, pursuant to the Fourth and Fourteenth Amendments to the United States of America Constitution.

Additionally, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), Mr. Taylor requests an evidentiary hearing to adequately examine the testimony which supports the search warrant affidavits at issue herein. A Memorandum in Support, setting forth the basis of Mr. Taylor's request, is attached hereto and incorporated herein by reference. Mr. Taylor reserves the right to amend and/or supplement this motion.

Respectfully submitted,

_/s/ Joseph P. Morse_
JOSEPH P. MORSE (0073298)

323 W. Lakeside Avenue, Suite 220
Cleveland, Ohio 44113
Phone: (216) 241-0520
Fax:    (216) 241-6961
Email: jpm@jmorse-law.com
*Attorney for Defendant*

## MEMORANDUM IN SUPPORT

### I.      STATEMENT OF THE CASE

In mid-January of 2024, law enforcement began a drug trafficking investigation into Defendant Thomas Taylor. This investigation became supported by circumstantial evidence primarily through physical and electronic surveillance of Mr. Taylor's movements between four properties as well as controlled buys conducted from an alleged co-conspirator. Upon an insufficient investigation, law enforcement obtained search warrants for Mr. Taylor's alleged Residences at 3236 East 134th Street, Cleveland, Ohio 44120; 10916 Dove Avenue, Cleveland, Ohio 44120; 17415 Stockbridge Avenue, Cleveland, Ohio 44128; and 10106 Ridgewood Drive, Twinsburg, Ohio 44087 (collectively "the Residences"). Additionally, prior to executing said search warrants, law enforcement arrested Mr. Taylor.

For the most part, the search warrant affidavits concern Mr. Taylor's movements between the Residences. Despite Mr. Taylor owning and operating a legitimate transportation business— in which he daily travels to individual's residences for pick-up and drop-off—law enforcement instead categorize these movements as indicative of drug trafficking. Without ever observing narcotics or hand-to-hand transactions, law enforcement focus their expensive resources on the Residences and Mr. Taylor's daily movements between the Residences. Eventually, using an allegedly reliable informant, law enforcement conduct controlled buys from another individual— an alleged co-conspirator, Noreece Young—inside the 3236 East 134th Street residence. Notably, no controlled substances are found nor controlled buys occur at the other Residences. The search warrant affidavits rely solely upon Mr. Taylor's status as a suspected drug-dealer and his movements between the Residences.

As a result of the unconstitutional searches of the Residences and the unconstitutional

arrest of Mr. Taylor, he is indicted on one count of Conspiracy to Distribute and Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. Mr. Taylor respectfully moves this Honorable Court to suppress all evidence seized from the Residences.

## II.     MR. TAYLOR'S FOURTH AMENDMENT RIGHTS WERE VIOLATED.

The Fourth Amendment provides protection against unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Designed to prohibit the general warrants common at the time of its drafting, this text requires that a search warrant specifically identify the place to be searched and the things to be seized. *Id.*; *Ashcroft v. al-Kidd*, 563 U.S. 731, 742–43 (2011). Additionally, a probable-cause nexus must connect the place and the things together. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). For a search warrant to be facially valid, there must be a fair probability that the specific place that law enforcement wants to search will contain the specific things that they are looking for. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). When determining whether a search warrant affidavit establishes probable cause, courts look only to the "four corners of the affidavit." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).

> ### A.  Because the Search Warrant Affidavit Lacks a Sufficient Probable-Cause Nexus Between the Residences and Controlled Substances, the Search Warrant is Facially Invalid.

Generally, there must be a probable-cause nexus between the criminal activity and the place to be searched in order to search that location. *United States v. Williams*, 544 F.3d 683, 687

(6th Cir. 2008). If the location to be searched is an individual's home, that probable-cause nexus must be sufficient to overcome the Fourth Amendment's rigorous protection. *See Florida v. Jardines*, 569 U.S. 1, 6 (2013) (allowing individuals to "retreat into" their home and "be free from unreasonable governmental intrusion" therein). The connection between the residence and the evidence of criminal activity must be specific and concrete, not "vague" or "generalized." *Carpenter*, 360 F.3d at 595.

Presently, the search warrant affidavits attempt to establish the probable-cause nexus between the Residences and controlled substances based on Mr. Taylor's status as a suspected drug-dealer, rather than direct evidence of distribution on the properties.

### 1.  Mr. Taylor's Status as a Suspected Drug-Dealer

Previously, in the context of suspected drug-dealers' homes, the probable-cause nexus analysis was unclear. *See United States v. Pointer*, No. 22-1082, 2022 WL 17820539, at *4 (6th Cir. Dec. 20, 2022). However, currently courts consistently determine the probable-cause nexus analysis turns on the *ongoing* nature of the drug distribution and the *quantity* of drugs the suspected drug-dealer is distributing when there is no connection between the suspected drug-dealer's residence and the drug distribution activity. *See id.*; *United States v. Sheckles*, 996 F.3d 330 (6th Cir.), *cert. denied*, 142 S. Ct. 717 (2021); *United States v. Reed*, 993 F.3d 441 (6th Cir.), *cert. denied*, 142 S. Ct. 289 (2021).

Noting that the caselaw had left "unclear the amount of drug activity required to invoke this nexus principle[,]" the Sixth Circuit stated:

> [W]e have reconciled our cases in fact-specific ways. *See Reed*, 993 F.3d at 448–50. When we have used a drug dealer's drug activities alone to find probable cause to search the dealer's home, the dealer was engaged in "continual and ongoing operations" typically involving large amounts of drugs. *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018); *see Reed*, 993 F.3d at 453–54 (citing cases). In one case, for example, officers stopped a "large scale [h]eroin dealer" in a car filled

with some **11 kilograms of cocaine**. *United States v. Davis*, 751 F. App'x 889, 891 (6th Cir. 2018). In another, officers learned, among other things, that a drug dealer had picked up a package containing **a kilogram of cocaine**. *United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir. 2002). When, by contrast, we have found that drug distribution alone did not suffice, the police had evidence only of "***a single instance of drug possession or distribution***[.]" *McCoy*, 905 F.3d at 418 n.5; *see Brown*, 828 F.3d at 383–84. Or they lacked independently corroborated evidence that the defendant was even a drug dealer (as opposed to a drug user). *See United States v. McPhearson*, 469 F.3d 518, 524–25 (6th Cir. 2006).

*Sheckles*, 996 F.3d at 342 (emphasis added).

In *United States v. Sheckles*, the Sixth Circuit determined that a suspected drug-dealer connected to a "large, ongoing drug trafficking operation" centered in Mexico (i.e., a Mexican Cartel) presented a "close[ ] call." *Id.* at 341–42. The suspected drug-dealer challenged the probable-cause nexus between his residence at Terrace Creek and the narcotics evidence sought. *Id.* at 340. The warrant affidavit established that the suspected drug-dealer leased a specific apartment at the Terrace Creek apartment complex; however, he sold drugs at the Crescent Centre apartment complex. *Id.* In addition to other evidence of the suspected drug-dealer's ongoing drug distribution operations, the warrant affidavit asserted that the suspected drug-dealer negotiated to buy **10 kilograms of cocaine**. *Id.* at 342. Despite the "close[ ] call," the Court held that the warrant affidavit contained a probable-cause nexus and affirmed the denial of the motion to suppress. *Id.* at 342. Therefore, a sufficient probable-cause nexus exists between a suspected drug-dealer's residence and narcotics evidence only in the case of high-level drug traffickers engaging in ongoing distribution of kilogram quantities of narcotics.

Distinguishably, Mr. Taylor allegedly was present for *one* controlled buy, in which 620 grams of narcotics were purchased.

### 2. 10106 Ridgewood Drive, Twinsburg, Ohio 44087

Presently, the search warrant affidavit attempts to establish the probable-cause nexus

between 10106 Ridgewood Drive and controlled substances in two ways. First, the warrant affidavit attests that Mr. Taylor is a suspected drug-dealer, and therefore—despite the absence of *any* nexus—narcotics will more likely than not be found in his alleged residence. Second, the warrant affidavit attests that Mr. Taylor, in the course of being a suspected drug-dealer, traveled to 3236 East 134th Street—the location of the fourth controlled buy—from 10106 Ridgewood Drive.

The warrant affidavit does not aver that any narcotics transactions—controlled buys or otherwise—occurred nor controlled substances were found at the Ridgewood residence. Because no direct evidence of drug trafficking activity was present at the Ridgewood residence, the warrant affidavit relies upon Mr. Taylor's alleged drug trafficking activity and his connection to the Ridgewood residence to establish that there is a fair probability that narcotics will be found at the residence. *See Sheckles*, 996 F.3d 330; *Reed*, 993 F.3d 441. However, there is insufficient evidence to establish that Mr. Taylor was engaging in the ongoing distribution of narcotics, and, even viewed in a light favorable to the government, that Mr. Taylor was engaging in distribution to the scale required by the caselaw which permits the assumption of a probable-cause nexus between a suspected drug-dealer's residence and narcotics evidence. *See Sheckles*, 996 F.3d at 342.

Here, during an approximately month-long investigation, the warrant affidavit avers that Mr. Taylor *once* was present during a controlled buy. The controlled buy resulted in the purchase of 620 grams of controlled substances. This quantity is significantly smaller than the kilograms of controlled substances upon which the Sixth Circuit has repeatedly found a probable-cause nexus between drug distribution activity and the suspected drug-dealer's residence. *See Sheckles*, 996 F.3d at 342.

Law enforcement did not have any indication that Mr. Taylor possessed larger quantities of narcotics at the Ridgewood residence. Nor did law enforcement attest that any of Mr. Taylor's alleged drug distribution activity occurred at the Ridgewood residence. Although law enforcement attempt to frame Mr. Taylor's travel directly from the Ridgewood residence to 3236 East 134th Street—the location of the fourth controlled buy—as evidence of his transportation of the 620 grams, Mr. Taylor did not carry any bags, possibly containing the narcotics, out of the Ridgewood residence. Instead, the narcotics were retrieved from the back of the 134th Street residence by Noreece Young, indicating that the narcotics were already present at the 134th Street residence. Indeed, the Honorable Judge Clay has noted that, "[a]n officer's observation of a defendant traveling, between his purported residence and the location where the drug transaction occurred, *once*, without evidence that drug related items were transported from the house to the drug sale location, does not suffice to establish a sufficient nexus between the residence and drug transaction." *United States v. Westley*, No. 22-3356, 2023 U.S. App. LEXIS 22357, *22 (6th Cir. Aug. 22, 2023). The warrant affidavit attempts to rely upon Mr. Taylors's drug-dealer status to establish the probable-cause nexus to his alleged residence at Ridgewood Drive.

Moreover, law enforcement failed to sufficiently confirm that the Ridgewood residence was indeed Mr. Taylor's residence. *See Westley*, 2023 U.S. App. LEXIS 22357. The warrant affidavit avers that law enforcement learned of a possible residence for Mr. Taylor at 10106 Ridgewood Drive through the Accurint / LexisNexis database. Additionally, law enforcement observed Mr. Taylor's vehicles parked in the residence's driveway as well as him entering the residence on multiple occasions—the same movements alleged at all of the other residences.

Recently, in *United States v. Westley*, law enforcement's reliance on third-party databases

has been called into question. *See id.* In *Westley*, law enforcement utilized the Clear / Westlaw database to determine that a suspected drug-dealer, who had directly engaged in one controlled buy, lived at the Linnet residence subject to the search warrant. *Id.* at 20–21. The suspected drug-dealer traveled directly from the Linnet residence—not carrying any bags from the residence—to the controlled buy location. *Id.* at 21. The only direct evidence of narcotics at the Linnet residence was narcotics residue recovered during a trash pull. *Id.* at 23–24. The Sixth Circuit held that the narcotics residue was sufficient to establish the probable-cause nexus stating:

> Had drug residue not been found in the residence's trash, the reliability of the law-enforcement [database] search would have been more paramount. If the sole basis for the search is the inference that evidence of drug dealing is likely to be found at the suspected drug dealer's residence, then identifying the residence as belonging to the defendant is critical.

*Id.* at 39 (citing *United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir. 2002)). Utilizing third-party databases to confirm a suspected drug-dealer's residence causes the court such concern because "[t]he government provides no way for th[e] Court to evaluate the reliability and relevance of the data provided by this source." *Id.* at 20–21. Thus, when there is no narcotics evidence at the residence, confirmation of a suspected drug-dealer's residence is paramount.

Similarly, here, law enforcement's utilization of the Accurint / LexisNexis database is insufficient to establish that the Ridgewood residence was indeed Mr. Taylor's residence. Nevertheless, the one controlled buy in Mr. Doe's case differs greatly from the kilograms of controlled substances in cases where courts have found a sufficient probable-cause nexus to a suspected drug-dealer's residence based solely upon their drug-dealer status. Therefore, a sufficient probable-cause nexus between the Ridgewood residence and controlled substances is not established in the warrant affidavit.

### 3. 17415 Stockbridge Avenue, Cleveland, Ohio 44128

Presently, the search warrant affidavit attempts to establish the probable-cause nexus between 17415 Stockbridge Avenue and controlled substances in two ways. First, the warrant affidavit attests that Mr. Taylor is a suspected drug-dealer, and therefore—despite the absence of *any* nexus—narcotics will more likely than not be found in his alleged residence. Second, the warrant affidavit attests that Mr. Taylor, in the course of being a suspected drug-dealer, brought a single bag—of which the contents are unknown—to 3236 East 134th Street.

The warrant affidavit does not aver that any narcotics transactions—controlled buys or otherwise—occurred nor controlled substances were found at the Stockbridge residence. Because no direct evidence of drug trafficking activity was present at the Stockbridge residence, the warrant affidavit relies upon Mr. Taylor's alleged drug trafficking activity and his connection to the Stockbridge residence to establish that there is a fair probability that narcotics will be found at the residence. *See Sheckles*, 996 F.3d 330; *Reed*, 993 F.3d 441. However, as established above, there is insufficient evidence to establish that Mr. Taylor was engaging in the ongoing distribution of narcotics, and, even viewed in a light favorable to the government, that Mr. Taylor was engaging in distribution to the scale required by the caselaw which permits the assumption of a probable-cause nexus between a suspected drug-dealer's residence and narcotics evidence. *See Sheckles*, 996 F.3d at 342.

Here, during an approximately month-long investigation, the warrant affidavit avers that Mr. Taylor *once* transported a bag from the Stockbridge residence to 3236 East 134th Street. This conduct was not in relation to any controlled buy nor averment of any observed narcotics transactions occurring at the 134th Street residence. Further, law enforcement did not have any indication as to the contents of the bag. Yet again, "[a]n officer's observation of a defendant

traveling, between his purported residence and the location where the drug transaction occurred, *once*, without evidence that *drug related items* were transported from the house to the drug sale location, does not suffice to establish a sufficient nexus between the residence and drug transaction." *Westley*, 2023 U.S. App. LEXIS 22357 at *22.

Moreover, law enforcement failed to sufficiently confirm that the Stockbridge residence was indeed Mr. Taylor's residence. *See Westley*, 2023 U.S. App. LEXIS 22357. The warrant affidavit avers that law enforcement learned—an entire year prior—from an allegedly reliable informant that the Stockbridge residence was Mr. Taylor's "money house." Despite the designation as a "money house" necessarily implying it is not a "drug house," how this informant knows such information is unknown. The warrant affidavit never avers to this informant's basis of knowledge as required by well-established principles of Fourth Amendment jurisprudence. *See United States v. Allen*, 211 F.3d 970, 972–73 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)) (veracity, reliability, and basis of knowledge are "independent requirements to be rigidly exacted in every case."). In fact, law enforcement believe the resident and possible owner to be Marcia Hawkins. Therefore, a sufficient probable-cause nexus between the Stockbridge residence and controlled substances is not established in the warrant affidavit.

### 4.  10916 Dove Avenue, Cleveland, Ohio 44120

Presently, the search warrant affidavit attempts to establish the probable-cause nexus between 10916 Dove Avenue and controlled substances in four ways. First, the warrant affidavit attests that Mr. Taylor is a suspected drug-dealer, and therefore—despite the absence of *any* nexus—narcotics will more likely than not be found in his alleged residence. Second, the warrant affidavit attests that Mr. Taylor, in the course of being a suspected drug-dealer, traveled to 3236 East 134th Street—the location of the first and second controlled buy—from 10916 Dove

11

Avenue. Third, the warrant affidavit attests that a trash pull recovered sandwich bags with an unknown, untested residue. Finally, the warrant affidavit attests vague conversations between Mr. Taylor and an informant indicate a pill press is located at 10916 Dove Avenue.

The warrant affidavit does not aver that any narcotics transactions—controlled buys or otherwise—occurred nor controlled substances were found at the Dove residence. While a trash pull was conducted, it was unfruitful. The pull merely produced sandwich bags with an unknown residue—which, of course, was never confirmed as narcotics. *See Westley*, 2023 U.S. App. LEXIS 22357 at *39 (citing *United States v. Miggins*, 302 F.3d 384, 393–94 (6th Cir. 2002)). Because no direct evidence of drug trafficking activity was present at the Dove residence, the warrant affidavit relies upon Mr. Taylor's alleged drug trafficking activity and his connection to the Dove residence to establish that there is a fair probability that narcotics will be found at the residence. *See Sheckles*, 996 F.3d 330; *Reed*, 993 F.3d 441. However, as established above, there is insufficient evidence to establish that Mr. Taylor was engaging in the ongoing distribution of narcotics, and, even viewed in a light favorable to the government, that Mr. Taylor was engaging in distribution to the scale required by the caselaw which permits the assumption of a probable-cause nexus between a suspected drug-dealer's residence and narcotics evidence. *See Sheckles*, 996 F.3d at 342.

Here, the warrant affidavit attempts to frame Mr. Taylor's travel directly from the Dove residence to the 134th Street residence—the location of the first and second controlled buy—as evidence of his transportation of the narcotics. However, Mr. Taylor did not carry any bags, which may possibly contain narcotics, out of the Dove residence. Instead, the narcotics were retrieved from the 134th Street residence by Noreece Young, indicating that the narcotics were already present at the 134th Street residence. Yet again, "[a]n officer's observation of a

defendant traveling, between his purported residence and the location where the drug transaction occurred, *once*, without evidence that *drug related items* were transported from the house to the drug sale location, does not suffice to establish a sufficient nexus between the residence and drug transaction." *Westley*, 2023 U.S. App. LEXIS 22357 at *22. Additionally, the conversations between Mr. Taylor and an allegedly reliable informant are too vague to decipher what they concern. Therefore, a sufficient probable-cause nexus between the Dove residence and controlled substances is not established in the warrant affidavit.

### 5. 3236 East 134th Street, Cleveland, Ohio 44120

Presently, the search warrant affidavit attempts to establish the probable-cause nexus between 3236 East 134th Street and controlled substances by averring that using an allegedly reliable informant, law enforcement conduct controlled buys from another individual—an alleged co-conspirator, Noreece Young—inside the 3236 East 134th Street residence. However, these controlled buys were not conducted by Mr. Taylor. Nor was Mr. Taylor even present during the first three controlled buys, which constitute the majority of the narcotics purchased by law enforcement. These narcotics cannot be attributed to Mr. Taylor merely because he occasionally visited the residence.

Concluding that the search warrants are facially invalid, the appropriate remedy for the unconstitutional searches of the Residences must be determined.

### B. Because the Warrantless Arrest Lacks Probable Cause, the Arrest Violated the Fourth Amendment.

Generally, the Fourth Amendment requires that an "official seizure of the person must be supported by probable cause, even if no formal arrest is made." *Michigan v. Summers*, 452 U.S. 692, 696 (1981). When an individual is detained as a consequence of being an occupant of a

premises being searched pursuant to a search warrant, "both the law enforcement interest and the nature of the 'articulable facts' supporting the detention are relevant." *Id.* at 702.

Here, Mr. Taylor owns and operates a legitimate transportation business—in which he daily travels to individual's residences for pick-up and drop-off. Without ever observing hand-to-hand transactions with Mr. Taylor, law enforcement categorized his movements as indicative of drug trafficking. Mr. Taylor never engaged in any controlled buys nor was observed with narcotics. As such, Mr. Taylor's arrest lacked probable cause.

## III.    THE EXCLUSIONARY RULE PROVIDES THE PROPER REMEDY.

The exclusionary rule bars the government from admitting incriminating evidence at a defendant's trial if law enforcement violates the Fourth Amendment when discovering said evidence. *Mapp v. Ohio*, 367 U.S. 643, 654 (1961). Yet, the exclusionary rule does not reach all Fourth Amendment violations no matter the circumstances. *Davis v. United States*, 564 U.S. 229, 237–38 (2011). In determining the contours of the exclusionary rule's reach, deterrence of law enforcement misconduct is the guiding light. *See id.* at 239.

In the circumstances of suspected drug-dealers' residences, law enforcement's assuming leap that all drug-dealers hide evidence of their crimes in their residences presents grave concerns of constitutional consequence for all individuals. *See Reed*, 993 F.3d at 444. This assumption, at best, lowers the bar or, at worst, altogether eradicates the probable-cause nexus in all drug trafficking cases. Perhaps the most unsettling fact is that this eradication occurs within the Fourth Amendment's "core" protection—the sanctity of one's home. *Jardines*, 569 U.S. at 6. To deter such eradication of a core constitutional protection, the exclusionary rule should apply.

### A.  Because Law Enforcement Did Not Reasonably Rely on the Search Warrant, the Good-Faith Exception Does Not Apply.

Even when a search violates the Fourth Amendment, the Supreme Court has held that

courts should not suppress evidence if law enforcement reasonably relied on a judge's determination that probable cause justified a warrant. *United States v. Leon*, 468 U.S. 897, 922–23 (1984). As relevant here, *Leon*'s good-faith exception to the exclusionary rule does not apply if the warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. This type of "bare-bones affidavit" must still identify a "minimally sufficient" nexus between the location to be searched and the evidence sought. *Reed*, 993 F.3d at 450. A minimally sufficient nexus requires "some connection" between the criminal activity at issue and the place to be searched. *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017).

In *United States v. Reed*, the Sixth Circuit punted on the "thornier constitutional question" of the probable-cause nexus, instead finding that the good faith exception applied. *Reed*, 993 F.3d at 445–450 ("[T]he facts of this case sit on the hazy constitutional border between a sufficient nexus and an insufficient hunch."). The suspected drug-dealer challenged the probable-cause nexus between his residence at Kate Bond Road and the evidence sought. *Reed*, 993 F.3d at 445. The warrant affidavit established that the suspected drug-dealer engaged in multiple controlled buys of marijuana at another home and business. *Id.* Additionally, an informant confirmed the suspected drug-dealer's residence at Kate Bond Road, and law enforcement observed his vehicle at the residence. *Id.* The Court held that, given the "'unsettled jurisprudence' on this nexus question," law enforcement could reasonably rely on the judge's finding that the suspected drug-dealer's ongoing drug distribution activity provided probable cause to search his residence. *Reed*, 993 F.3d at 445 (citing *United States v. Hodge*, 246 F.3d 301, 309 (3d Cir. 2001) (Alito, J.)). Additionally, the Honorable Judge Clay wisely noted that "*Leon*'s low 'bare-bones' bar" should not be relied upon to justify an otherwise significant

Fourth Amendment violation into an individual's residence. *Reed*, 993 F.3d at 454 (Clay, J. dissenting) ("The majority opinion attempts to functionally dispense with the probable cause requirement for searches of an individual's residence under the guise of a law enforcement officer's "good faith" reliance on a facially invalid search warrant.").

Notwithstanding the consequential concerns of constitutional jurisprudence expressed by Judge Clay,[1] the "unsettled jurisprudence" of the probable-cause nexus analysis was no longer unsettled at the time of issuance and execution of the search warrants on the Residences. *Sheckles*, decided *after Reed*, reaffirmed that the probable-cause nexus analysis turns on the *ongoing* nature of the drug distribution and the *quantity* of drugs the suspected drug-dealer is distributing, providing examples of how much was just enough. Mr. Taylor allegedly was present for *one* controlled buy, in which 620 grams of narcotics were purchased. The search warrants for the Residences were issued on March 19, 20, and 28, 2024, and executed on April 1, 2024. The *Sheckles* opinion was issued on April 30, 2021. As such, the reason for relying on the good faith exception in *Reed* is no longer applicable in this case, and the warrant affidavits do not identify even a minimally sufficient probable-cause nexus.

Additionally, in the present case, the benefits do not outweigh the costs of admitting the evidence in violation of the Fourth Amendment. *See United States v. Baker*, 976 F. 3d 636, 642 (6th Cir. 2020). Mr. Taylor's Fourth Amendment rights within the sanctity of his home are severely degraded—if not nonexistent—unless there is an effective remedy to reinvigorate those rights upon a violation. Indeed, law enforcement's assuming leap in drug trafficking cases is in direct contradiction with their attestation that "individuals will occupy drug houses"—drug

---

[1] After *Reed*, Judge Clay joined the majority in *United States v. Pointer,* No. 22-1082, 2022 WL 17820539 (6th Cir. Dec. 20, 2022), which did not find the good faith exception applicable to uphold a search warrant, but instead found a sufficient probable-cause nexus.

houses which, as opposed to suspected drug-dealers' residences, law enforcement frequently assert are utilized to hide evidence of drug trafficking. Law enforcement should not be allowed to change their tune on where they believe evidence of drug trafficking will be found in a particular case without presenting a sufficient probable-cause nexus. Simply, the Fourth Amendment was not drafted to permit law enforcement to have their cake and eat it too.

Concluding that the good faith exception does not—and should not—apply, the applicability of the exclusionary rule results in the mandatory suppression of all evidence seized from the unconstitutional searches of the Residences.

**B. Because the Search Warrant Affidavit Knowingly or Recklessly Included Falsities, the Good-Faith Exception Does Not Apply and an Evidentiary Hearing Must be Held.**

Moreover, *Leon*'s good-faith exception to the exclusionary rule does not apply when the warrant affidavit includes a false statement. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–23). Mr. Taylor asserts that the Affiant knowingly and intentionally included false statements in the search warrant affidavits to bolster the probable-cause nexus between the Residences and controlled substances in order to obtain the search warrants for the Residences.

When a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). At minimum, the standard is recklessness, and "[a]llegations of negligence or innocent mistake are insufficient." *Id.* at 171. The standard is only applicable to statements "of the affiant, not of any nongovernmental

17

informant." *Id.* To make a sufficient preliminary showing, a defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false." *Id.* at 170.

Here, in an effort to bolster the probable-cause nexus between the Residences and controlled substances, the Affiant knowingly and intentionally included in the warrant affidavits false statements regarding the ongoing criminal activity of Mr. Taylor and his alleged co-conspirators. In the affidavit, the Affiant stated that "[b]ased on detectives training and experience, the behavior exhibited by Taylor and the males he met with on January 31, 2024, February 19, 2024, and February 21, 2024, are indicative of narcotics trafficking" because "every individual during surveillance that detectives were able to identify has a criminal history for drug trafficking as well as recent, reliable information that *most* of these subjects are *still* involved in criminal activity." The intentional statement that individuals are *still* involved in ongoing criminal activity was intended to bolster the idea that inconspicuous, non-criminal activity was in fact drug trafficking. Indeed, people coming and going from a residence is hardly criminal nor unique. In an effort to frame this common behavior as criminal, the Affiant stated that these individuals were known to still be engaging in criminal activity. Notwithstanding the Affiant failing to state a basis of knowledge for this allegedly reliable information, the statement requires many assumptions. Law enforcement had not conducted any controlled buys from these individuals nor observed any criminal activity. Instead, law enforcement assumed—based on individuals' prior criminal histories—that these individuals were furthering their rap sheets.

Additionally, in the search warrant for 17415 Stockbridge Avenue, the Affiant knowingly and intentionally included in the warrant affidavit false statements regarding the continual nature of the controlled buys. In the affidavit, the Affiant stated that "[b]ased on detectives training and experience, the short in-and-out trips by Taylor from the residence at 17415 Stockbridge

Avenue, Cleveland, Ohio 44128 on March 23, 2024, are indicative of a narcotics trafficker storing drug proceeds in a safe location separate from where he stores and sells narcotics" because "Taylor left 17415 Stockbridge Avenue, Cleveland, Ohio 44128 and traveled to the same location where each of the controlled buys *from Taylor* have, and *would continue*, to take place." The intentional statement that all of the controlled buys were from Mr. Taylor and *would continue* to be from Mr. Taylor at 3236 East 134th Street was intended to bolster the probable-cause nexus between Mr. Taylor's alleged drug trafficking and 17415 Stockbridge Avenue. Notably, not only was the assertion that controlled buys would continue to happen presumptuous, but no additional controlled buys occurred.

Mr. Taylor contends that, in an effort to bolster the probable-cause nexus between the Residences and controlled substances, the Affiant knowingly and intentionally made the above-mentioned false statements calculated to mislead the issuing Magistrate. Assuming, *arguendo*, that the false statements were made by the Affiant with a reckless disregard for the truth, the misleading information defeats the constitutional validity of the search warrants under the subjective standard. Mr. Taylor has made the necessary "substantial preliminary showing," which requires a hearing be granted upon request. *Franks*, 438 U.S. 155–56. Therefore, Mr. Taylor is entitled to an evidentiary hearing.

## IV.    THE EVIDENCE MUST BE SUPPRESSED AND AN EVIDENTIARY HEARING HELD.

The search warrant affidavit does not attest sufficient facts that Mr. Taylor possessed narcotics within the Residences. Because the probable-cause nexus between the Residences and controlled substances is absent, the search warrants are facially invalid. Based upon the guiding principle of deterrence, the good-faith exception is inapplicable. Thus, all evidence found as a result of the facially invalid search warrants must be suppressed.

WHEREFORE Defendant Thomas Taylor respectfully moves this Honorable Court for an order suppressing, and excluding any reference thereto during any hearing in this case, all evidence seized by law enforcement on or about April 1, 2024 in the course of their searches of 3236 East 134th Street, Cleveland, Ohio 44120; 10916 Dove Avenue, Cleveland, Ohio 44120; 17415 Stockbridge Avenue, Cleveland, Ohio 44128; and 10106 Ridgewood Drive, Twinsburg, Ohio 44087. Additionally, Mr. Taylor requests an evidentiary hearing to adequately examine the testimony which supports the search warrant affidavits at issue herein.

Respectfully submitted,

_/s/ Joseph P. Morse_
JOSEPH P. MORSE (0073298)
323 W. Lakeside Avenue, Suite 220
Cleveland, Ohio 44113
Phone: (216) 241-0520
Fax:    (216) 241-6961
Email: jpm@jmorse-law.com
*Attorney for Defendant*

<u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing *Motion to Suppress* was electronically filed with the Clerk of Courts on this  17th  day of June, 2024. Notice of this filing will be sent to the United States Attorney for the Northern District of Ohio, Rebecca C. Lutzko, by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

 */s/ Joseph P. Morse* _____
JOSEPH P. MORSE (0073298)
*Attorney for Defendant*