IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:24 CR 155 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| THOMAS TAYLOR, | ) | |
| | ) | MEMORANDUM OPINION |
| Defendants. | ) | AND ORDER |

This matter is before the Court on Defendant, Thomas Taylor's Amended Motion to Suppress, and request for hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  (ECF #20).  The Government filed an Opposition to Defendant's Motion.  (ECF #30).  No Reply was filed.  An in person hearing was held on May 5, 2025.  (ECF #63).

**FACTUAL BACKGROUND**

In March of 2024, United States Magistrate Judge James E. Grimes Jr. approved search warrants for the following four residences: (1) 3236 East 134th Street, Cleveland, OH 44120; (2) 10916 Dove Avenue, Cleveland, OH 44120; (3) 17415 Stockbridge Avenue, Cleveland OH 44128; and, (4) 10106 Ridgewood Drive, Twinsburg OH 44087.   Police also received written consent from the owner of the Stockbridge Avenue property to conduct the search of that property. (ECF #32-5). The warrants for the first two addresses authorized a search for controlled substances, paraphernalia, and other drug making tools.  The warrants for the second two addresses authorized a search for drug proceeds, records, ledgers, and phones, among other items.

Mr. Thomas does not claim to be the owner of any of these properties, and has not claimed to be a resident of any of the properties.   The searches of all four properties were conducted on or about April 1, 2024.

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing, the place to be searched, and the persons or things to be seized." U.S. Const. Amend IV.   "While the Fourth Amendment secures the right of the people to be free from unreasonable searches and seizures, it does not, in explicit language, provide any remedy for the violation of this right." WILLIAM E. RINGAL, SEARCHES AND SEIZURES, §1:5, 2d ed. 2025; see also, *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) .  The Supreme Court eventually adopted the exclusionary rule contained in the Fifth Amendment as a necessary implication of the Fourth Amendment, thereby prohibiting the use of evidence obtained in violation of the Constitution in any judicial proceeding. *Weeks v. United States*, 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 1081(1961).

Although the exclusionary rule has remained, the justification supporting its application has narrowed over time,  When originally established, the exclusionary rule was seen by the Supreme Court as both a means of deterring improper policing and of maintaining judicial integrity. RINGAL, §1.5. However, in *Leon*, 468 U.S. 897 and *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S. Ct. 3424, 82 L. Ed. 2d 737 (1984), the Supreme Court made clear that the

exclusionary rule should not be used to deter potential errors of judgment in judicial decisions. Rather, it should be employed to "operate as a 'systemic' deterrent" to prevent police misconduct and overreach. *Leon*, 468 U.S. at 916-17 ("[T]he exclusionary rule is designed to deter police misconduct, rather than to punish the errors of judges and magistrates." ). In doing so, the *Leon* Court also explicitly held that the exclusionary rule is not in and of itself a Constitutional right, rather it is a judicially imposed remedy designed to promote adherence to the principles protected by the Fourth Amendment. *Id.* at 897, 906; see also, *United States v. Calandra*, 414 U.S. 338, 348, 414 U.S. 354 (1974). Hence, not every violation of the Fourth Amendment justifies application of the exclusionary rule.

In order to justify the exclusion of evidence found during the execution of a search warrant, a defendant must satisfy several criteria. First, he must establish that he has standing to challenge the search. Second, he must show that the warrant lacked probable cause. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Finally, he must establish that the officers executing the warrant were not acting in good faith. *Leon*, 468 U.S. 897. In situations where a search warrant has been issued, the burden of proving a violation of the Fourth Amendment, and the appropriateness of exclusion, rests with the party seeking to suppress evidence obtained during a search. *Rakas v. Illinois*, 439 U.S. 128, 144 (1978)(citing *Simmons v. United States*, 390 U.s. 377, 389-90(1968).

### ANALYSIS

A. <u>Consent</u>

It is undisputed that the owner of the Stockbridge Avenue residence, Marcia Hawkens, provided consent to the search of her property. It is also undisputed that she and her family were

the sole occupants of the property.  Mr. Taylor had no expectation of privacy in the home, and had no right to exclude anyone from the home.  Ms. Hawkens signed a written consent form allowing the officers to do a complete search for narcotics, currency, records, and other documents, and to "take any items which they determine may be related to their investigation." (ECF #32, Ex. 5).  "Where valid consent is given, a search is permissible under the Fourth Amendment even without a warrant or probable cause."  *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006).  Mr. Taylor does not challenge the validity of the consent.  Therefore, there is no basis upon which the Court could exclude the evidence obtained during the search of 17415 Stockbridge Avenue, Cleveland OH 44128.

B. Standing

   A defendant must have standing in order to challenge the search or seizure, and to request the exclusion of evidence obtained.  *United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 3547, 65 L. Ed. 2d 619 (1980); see also, *Rakas v. Illinois*, 439 U.S. at 152.  Standing is also a prerequisite to obtaining a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).  In order to establish standing the defendant must show that the government violated his "legitimate expectation of privacy."  *Hicks v. Scott*, 958 F.3d 421, 431 (6th Cir. 2020); see also, *United States v. Padilla*, 508 U.S. 77, 81 (1993).  A person has a legitimate expectation of privacy if they: (1) "have exhibited an actual (subjective) expectation of privacy," and (2) the "expectation [is] one that society is prepared to recognize as reasonable."  *Id.*  Generally, an overnight guest has a legitimate expectation of privacy in the home of his host.  *Minnesota v. Olson*, 495, U.S. 91, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990).  In contrast, a casual visitor, especially when the visitor is engaging in illegal activity, has no legitimate expectation of privacy

-4-

at the host's property. The burden of establishing standing falls on the person challenging the search. *United States v. Smith*, 263 F.3d 571, 582 (6ᵗʰ cir. 2001).

In this case Mr. Taylor has offered no argument, in his motion or at the hearing, asserting that he had any legitimate expectation of privacy in the Dove Avenue, East 134ᵗʰ Street, or Stockbridge Avenue residences. Mr. Taylor also provided no reply or rebuttal to the Government's argument that he lacks standing to challenge the searches of these properties. He does not contest the Government's assertions that he has no proprietary or possessory interest in any of the four properties; he does not claim to have had exclusive control over any of the properties; and, he does not claim that he was able to exclude anyone from any of the properties. In other words, it is uncontested that he lacked dominion and control over any of the properties and that he had no legitimate right to privacy at the Dove Avenue, East 134ᵗʰ Street, or Stockbridge Avenue residences. *See, United States v. Rogers*, 97 F.4th 1038 (6ᵗʰ Cir. 2024).

The Court, therefore, finds that Mr. Taylor has no standing to challenge the searches conducted at 3236 East 134ᵗʰ Street, Cleveland, OH 44120;10916 Dove Avenue, Cleveland, OH 44120; and (3) 17415 Stockbridge Avenue. Further, Mr. Taylor has not established that he has sufficient standing to support a *Franks* hearing to test the veracity of the affidavits offered in support of the search warrants for these properties.[1] As the searches did not implicate Mr. Taylor's Fourth Amendment rights, there is no basis upon which the Court could exclude the

---

[1]

Although Mr. Taylor did not establish the right to a *Franks* hearing, in an abundance of caution, the Court nonetheless scheduled a hearing. The affiant was available at the hearing, and Mr. Taylor had the opportunity to call him as a witness, to testify himself, or to present other evidence addressing the sufficiency and veracity of the warrant affidavit. He decided to present no evidence, and instead presented arguments based solely on the four corners of the affidavit.

evidence obtained during these searches.

With regard to the property at Ridgewood Drive, Mr. Taylor also failed to establish that he had a reasonable expectation of privacy at this location. During the hearing, Mr. Taylor asked the Court to accept, for purposes of the motion to suppress, that he was an overnight guest at the this property. He argued, based on the assertions in the warrant affidavits, and the government's apparent concession at oral argument, that, as an overnight guest, he had standing to challenge the search at this property. However, Mr. Taylor offered no evidence that would show that he had any expectation of privacy at this residence. Despite the protections afforded by *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968), which holds that a defendant's testimony at a suppression hearing cannot be admitted against him at trial on the issue of guilt,[2] he chose not to testify at the suppression hearing, and he offered no other evidence connecting him to the property. He also made no argument in his motion, or in written response to the Government's brief that would indicate that he used this property as his residence or that he exhibited any actual (subjective) expectation of privacy in the property.

As the party seeking to suppress evidence, Mr. Taylor has the burden of establishing a Fourth Amendment violation and the propriety of using the exclusionary rule as a remedy. *Rakas v. Illinois*, 439 U.S. 128, 144 (1978)(citing *Simmons v. United States*, 390 U.s. 377, 389-90(1968). Mr. Taylor rests his argument for standing on a statement made in the warrant affidavit, which he, himself, disputes. He makes no admission and presents no evidence that

---

[2]

Although a defendant's testimony at a suppression hearing cannot be used against him at trial on the issue of guilt, it is admissible to impeach the defendant on cross-examination if the defendant testifies at trial. *Walder v. United States*, 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954).

could support the premise that he was an overnight guest at the property, or that he otherwise had any legitimate expectation of privacy at the residence. Having presented no evidence of any association to the property, Mr. Taylor has not satisfied his burden of proof to establish standing for purposes of asserting a Fourth Amendment violation, or to obtain a hearing on the veracity of the warrant affidavit under *Franks*.

C. Probable Cause

Even if the Court were to find that Mr. Taylor did have standing to challenge the search of the Ridgewood Drive residence, in order to justify the exclusion of evidence he must first establish that the warrant lacked probable cause. A warrant is based on probable cause if it is supported by an affidavit that establishes a fair probability, or likelihood that the specific place to be searched will contain the specific things that law enforcement is looking for. *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). In order to issue a warrant the affidavits need not include an "actual showing" of criminal activity at the location to be searched. *United States v. Christian*, 925 F.3d 305, 311-12 (6th Cir. 2019). Rather, a supporting affidavit need only show direct or circumstantial support to find, beyond a mere suspicion, that the searched premises contains contraband or evidence of a crime. *See, e.g., United States v. King, 227 F.3d 732, 739 (6th Cir. 2000); Illinois v. Gates, 462 U.S. 213 (1983); United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005); *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016).

A review of the sufficiency of the evidence presented in support of a search warrant is limited to the information contained in the four corners of the supporting affidavit. *See, e.g., United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009); *United States v. Brooks*, 594 F.3d 492 (6th Cir. 2010) . The affidavit must be judged based on a totality of the circumstances, using

commonsense, and taking into consideration that the they are "normally drafted by non-lawyers in the midst and haste of an on-going criminal investigation. *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004); *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986); *United States v. Brooks*, 594 F.3d 488, 490 (6th Cir. 2010). Reliance on hearsay is entirely proper. *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009). Further, probable cause may be based upon information received from informants, as well as information within the affiant's own knowledge. *Franks* at 165. When information is obtained from informants, the affidavit must provide "some of the underlying circumstances from which the officer concluded that the informant was . . . 'credible' or his information 'reliable.'" *Aquilar v. Texas,* 378 U.S. 108, 114 (1964); *Franks* at 165.

A judicial determination of probable cause, once made, "is entitled to 'great deference' and must not reversed in the absence of clear error." *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir. 1997)(citation omitted); *see also, e.g, United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002). "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," therefore, "the preference for warrants is most appropriately effectuated by by according 'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914 (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969). "[T]he task of the reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [judicial officer's] decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *see also, e.g., United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

Mr. Taylor argues that the search warrant permitting the search and seizure at the

-8-

Ridgewood Drive property lacked a sufficient probable cause nexus between the residence and the items sought. He cites *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) for the proposition that "there must be a probable-cause nexus between the criminal activity and the place to be searched in order to search that location." The Sixth Circuit has found a sufficient probable cause nexus exists when the government searches the home of a drug dealer engaged in a 'continual and ongoing operation," especially when the operation involves large amounts of drugs. *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018); *United States v. Reed*, 993 F.3d 441 (6th Cir. 2021)(cert. denied, 142 S. Ct. 289 (2021). In contrast, they found the nexus to be insufficient when there was only a single instance of drug possession or distribution, or when there was no corroborating evidence that indicated the defendant was a drug dealer. *United States v. Sheckles*, 996 F.3d 330, 342 (6th Cir. 2021)(*cert. denied*, 142 S. Ct. 717(2021)).

Mr. Taylor argues that the information in the warrant affidavit was insufficient to create a probable cause nexus between his residence and the alleged criminal activity because the affidavit acknowledges he was only alleged to be present for a single controlled buy of narcotics, and that buy occurred at a different location. His motion focuses on what he argues is a connection between the Ridgewood Drive property and the actual sale of drugs. He argues that no nexus exists between the residence and the alleged criminal activity because there is no allegation that drug sales occurred on this property. However, the search warrant for Ridgewood Drive did not list narcotics as an item subject to the search. Rather, that warrant permitted a search for currency, valuables, documents, safes, records, receipts, photographs, address books, vehicle titles, identification, firearms, cell phones, electronics, and other like items. (ECF #32-3, Attach. B). These are all items that could constitute evidence in a drug trafficking case, but which are

-9-

not necessarily directly related to the location of a drug buy.  They are items, including the proceeds and documentation of any narcotic sales, that are likely to be found at a residence, or other location where a person sleeps and keeps their property.  *See generally, United States v. Neal*, 106 F.4th 568, 573 (6th Cir. 2024); *United States v. Sanders*, No. 21-5945, 106 F.4th 455, 2024 U.S. App. LEXIS 15832, 2024 WL 3218723, at *6 (6th Cir. 2024)(*en banc*).

His argument also understates the amount of information in the affidavit that purports to connect Mr. Taylor to large scale drug trafficking activities, and to the Ridgewood Drive residence.  There are multiple informants who identified Mr. Taylor as a person who manufactured narcotics, conducted narcotic sales himself, and arranged for the sale of narcotics by others.  (ECF #32-3, PageID 307, 309, 315).  The affidavit painstakingly outlines information that connects Mr. Taylor to an on-going, large scale narcotics distribution scheme, through information obtained via informants, surveillance, direct observation, and common sense conclusions made by officers with significant training and experience in the investigation of drug trafficking crimes.  (Id.).

The affidavit also links the Ridgewood Drive property, not only to Mr. Taylor, but to the alleged drug trafficking activities.  Mr. Taylor was observed at the Ridgewood Drive property 4-5 times a week, routinely leaving in the early morning hours.  (ECF #32-3, PageID 311, 314).  One of the informants told investigators that this was a "residence from where Taylor would conduct activities related to his narcotic trafficking."  (ECF #32-3, PageID 314).   The affidavit alleges that Mr. Taylor occasionally left his white van at the residence for days on end, and a car belonging to a suspected co-conspirator, and sometimes driven by Mr. Taylor, was seen both at this residence and other locations where drug transactions had occurred.  (ECF #32-3,

-10-

PageID317-322). The facts of this case show a connection between the Defendant's alleged drug activity and the subject property. The affidavit sets forth facts that would show not only that Mr. Taylor lived or was an overnight guest at the subject property, but that the car he used to conduct drug transactions had been directly moved from the location of those transactions to the Ridgewood Drive property, where it would remain overnight and for other long periods of time.

The numerous informants are consistent in the information they provided, and they corroborate each other. The information provided by the informants is also corroborated by the surveillance, phone tapping, direct observation, and knowledge of the officers. (ECF #32-3, PageID 317-330). In addition to citing multiple sources which provided consistent information, the affidavit contains statements attesting to the reliability of the informants, and in some cases, includes a specific basis for the informant's knowledge. (ECF #32-3, PageID 307-311, 315). Therefore, the circumstances in this case fall squarely in line with the cases that have found a sufficient nexus between a drug dealer's residence and the likelihood of finding evidence related to drug trafficking activities.

There was no error, let alone clear error, in the magistrate's determination of probable cause. The affidavit supporting the search warrant for the residence at 10106 Ridgewood Drive, Twinsburg OH 44087 provides substantial evidence to support a finding of probable cause and the issuance of the warrant. The information provided establishes more than a fair probability, or likelihood that the residence would contain the specific items sought by law enforcement. The warrant was supported by probable cause and its issuance and execution did not violate Mr. Taylor's Fourth Amendment rights. There is no basis upon which to exclude any evidence obtained during the search of this property.

-11-

D.  <u>Good Faith Execution</u>

      Even if the Mr. Taylor had standing and the warrant affidavit did not support a finding of

probable cause, the evidence obtained should not be suppressed.  The exclusionary rule does not

apply when officers reasonably rely on a search warrant, even one that is unsupported by probable

cause, or is technically deficient on its face.  *Leon*, 468 U.S. 897; *Sheppard*, 468 U.S. 981.

Except in extraordinary circumstances, the existence of a search warrant issued by a magistrate

suffices to show that the executing officer acted in good faith in conducting the search.  *United*

*States v. Ross*, 456 U.S. 798, 823, n. 32 (1982); *Leon*, 468 U.S. at 922.   "[W]here officers rely in

an objectively reasonable fashion on a search warrant issued by a neutral magistrate that is

subsequently found to be invalid, the Fourth Amendment exclusionary rule does not require

suppression of the fruits of the search."  *United States v. Bowling*, 900 F.2d 926, 931 (6th Cir.

1990).

      The United States Supreme Court has recognized four grounds for finding extraordinary

circumstances that could override the good faith presumption:

> (1) if the magistrate or judge issuing the warrant was misled by information in an
> affidavit that the affiant knew was false or would have known was false except for
> his reckless disregard of the truth, *Franks v Delaware*, 438 U.S. 154 (1978);
>
> (2) if the magistrate wholly abandoned his judicial role, to the degree that the
> warrant was open-ended and left to be completed after the seizure was already
> carried out;" *Leon* at 923  (citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319
> (1979);
>
> (3) if the warrant is "so lacking in indicia of probable cause as to render official
> belief in its existence entirely unreasonable," *Brown v. Illinois*, 22 U.S. 263-64
> (White J., concurring in judgment); or
>
> (4) if the warrant is "so facially deficient - i.e. in failing to particularize the place
> to be searched or the things to be seized – that the executing officers cannot

-12-

reasonably be presumed to be valid." *Leon* at 923; *Cf Massachusetts v. Sheppard*, 468 U.S. 988-991.

"In short, where the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for . . . the officer is acting as a reasonable officer would and should act under the circumstances. Excluding the evidence [under such circumstances] can in no way affect his future conduct unless it is to make him less willing to do his duty.'" *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).

Mr. Taylor does not argue that the warrant was open-ended, or that it was facially deficient. Therefore, the Court will address only the first and third exceptions to the presumption of good faith afforded to the executing officers.

1. <u>Veracity of Affidavit</u>

In order to prove the first exception, it is necessary to determine whether the officer(s) providing the affidavits for the search request included information that they knew was false or would have known was false but for their reckless disregard for the truth. "When 'the Fourth Amendment demands a factual showing sufficient to compromise 'probable cause,' the obvious assumption will be a *truthful* showing.' This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct . . . [b]ut surely if is to be 'truthful' in the sense that the information put forward is believed or appropriately accepted by the affiant as true." *Franks* at 164-165 (quoting *United States v. Halsey*, 257 F.Supp. 1002, 1005 (SDNY 1969)(emphasis in original).

A defendant who challenges the veracity of the affidavit may be entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, in order to meet his burden of proof. In

order to be permitted a hearing under *Franks*, however, the defendant must first present "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks* at 171.  The allegations must be more than conclusory, and the proffer must specifically identify the claimed falsities, and include a statement of supporting reasons, along with supporting affidavits or other reliable statements or an explanation justifying their absence. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).  Identifying allegedly false statements provided by informants is insufficient, as are allegations of negligence or mistake. *Franks* at 171-172. "It is not enough for defendants to show that the affidavit contains false information; in order to obtain a *Franks* hearing, defendants must make a 'substantial preliminary showing' that the false statements originated with the government affiant." *United States v. Giacalone*, 853 F.2d 470, 477 (6th Cir. 1988).  Even if a defendant meets the requirements for a *Franks* hearing, as outlined above, he must also establish that the "absent the challenged statements, the affidavit would fail to support a finding of probable cause." *Bennett,* 905 F.2d at 934.

In this case, Mr. Taylor does not satisfy the requirements for obtaining a *Franks* hearing. He asserts in his motion that the affiant "knowingly and intentionally included false statements" including the following:

> (1)  every individual during surveillance that detectives were able to identify has a criminal history for drug trafficking as well as recent, reliable information that most of these subjects are still involved in criminal activity.

> (2) [b]ased on detectives training and experience, the short in-and-out trips by Taylor from the residence at 17145 Stockbridge Avenue, Cleveland, Ohio 44128 on March 23, 2024, are indicative of a narcotics trafficker storing drug proceeds in a safe location separate from where he stores and sell narcotics.

-14-

(3) Taylor left 17145 Stockbridge Avenue, Cleveland, Ohio 44128 and traveled to the same location where each of the controlled buys from Taylor have, and would continue, to take place.

Mr. Taylor does not include any affidavits or other reliable statements indicating that these statements are false, let alone that the affiant knew or should have known they were false. Further, when pressed during oral arguments, Defendant could not identify a single false statement contained in the affidavit. Rather, he conceded that the information presented was not necessarily false, but continued to argue that the context in which the information was presented was meant to mislead the magistrate. He proffered absolutely no evidence that would support their allegation that the information was false,[3] let alone that the affiant made deliberately false statements, or manifested a reckless disregard for the truth. Mr. Taylor clearly failed to meet the requirement of providing a "substantial preliminary showing' that any false statements originated with the government affiant. "Only after the defendant makes this showing may the court consider the veracity of statements made in an affidavit." *United States v. Archibald*, 685 F.3d 553, 558-559 (6th cir. 2012). Having failed to make the required showing, Mr. Taylor was not entitled to a *Franks* hearing to challenge the veracity of the warrant affidavit. Nonetheless the

---

[3]

  Although Mr. Taylor fails to develop his argument about the alleged falsity of the statement that "each of the controlled buys from Taylor have, and would continue, to take place," the Court notes that the controlled buys were not alleged to have been made directly from Mr. Taylor. The statements in the warrant affidavit establish, however, that the narcotics used in these buys allegedly originated with Mr. Taylor, and that he was physically present for at least one of those buys. This does not render the statement per se false, nor does it necessarily negate the officer's good faith execution of the warrant. It is very possible that the terminology "buys from Taylor" was meant to show that the buy involved narcotics that were provided by Mr. Taylor. More importantly, Mr. Taylor has presented no affidavit or other supporting evidence that would suggest the affiant knew the statement was false or recklessly disregarded the truth with regard to this statement.

-15-

Court scheduled a hearing, in order to provide the Defendant every possible opportunity to defend himself against the charges.  As noted in footnote one above, the affiant was available at the hearing, and Mr. Taylor had the opportunity to call him as a witness, to testify himself, or to present other evidence addressing the sufficiency and veracity of the warrant affidavit.  He decided to present no evidence, and instead presented arguments based solely on the four corners of the affidavit.  Nothing in the affidavit supports a finding that the affiant included information that he knew was false or would have known was false but for his reckless disregard for the truth.

Further, the allegedly false statements cited by Defendant are not necessary to the probable cause determination.  Even without the identified statements, the affidavits provided information from multiple informants, from surveillance and other tracking information, from phone recordings, and from the direct observation of officers.  These sources identified  Mr. Taylor as a known manufacturer and distributor of narcotics, and put him at the different locations where the alleged narcotics were manufactured and sold.  It also linked Mr. Taylor and the criminal activity to the Ridgewood Drive address, demonstrating a fair probability that the items specified in the warrant could be found at the Ridgewood Drive residence where he resided or commonly spent time as an overnight guest.   This exception does not apply to override the presumption that officers acted in good faith by executing the search warrant.

2. <u>Indicia of Probable Cause</u>

Defendant also contends that the search warrant permitting the search of Ridgewood Drive had no indicia of  probable cause and, therefore, could not reasonably have been relied on by the officers executing the warrant.   Even if the nexus between the conduct being investigated and Mr. Taylor's residence fell short of establishing probable cause to search the residence, the

-16-

officers executing the search warrant were entitled to rely on its validity, once it was signed by

the issuing judge. *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982); *Leon*, 468 U.S. at 922.

Therefore, this court cannot suppress the evidence obtained during the search unless it finds that

the affidavit was so deficient that the officers executing the warrant were not acting in good faith.

*See, United States v. Leon*, 468 U.S. 897 (1984); *United States v. Bowling*, 900 F.2d 926, 931 (6th

Cir. 1990). Although Mr. Taylor claims that the affidavit is "so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable," the evidence does not

support such a finding. *Leon*, 468 U.S. at 922-923.

     As set forth above in the analysis of probable cause, based on the evidence and

information contained in the affidavit, an officer executing the warrant would have no objective

reason to doubt its validity. This Court has determined that the affidavit provided a substantial

basis for a finding of probable cause. However, even if the Court of Appeals disagreed, the good

faith exception would still apply. In order to find that an executing officer cannot rely on a

judicially approved warrant, the officer would have to be aware that the supporting affidavit is

"so lacking in indicia of probable cause as to render official belief in its existence entirely

unreasonable." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004).

     In this case, the affidavit cited numerous witnesses who identified Mr. Taylor as being

involved in the manufacture and distribution of narcotics. These informants corroborate each

other, and the information provided by the informants is also corroborated by the surveillance,

phone tapping, direct observation, and knowledge of the officers. (ECF #32-3, PageID 317-330).

In addition to citing multiple sources which provided consistent information, the affidavit

contains statements attesting to the reliability of the informants, and in some cases, includes a

specific basis for the informant's knowledge. (ECF #32-3, PageID 307-311, 315). This is a far cry from the "bare bones" affidavits that a reasonable officer would be expected to recognize as defective despite its having been reviewed and approved by a judicial officer. *See, e.g., United States v. Neal,* 106 F.4th 568, 572 (6th Cir. 2024)*; United States v. Reed*, 993 F. 3d 441, 445 (6th Cir. 2021). Even if the affidavit did not provide a sufficiently substantial basis upon which the judge could have found probable cause, it was not so deficient that a reasonable officer would have reason to believe that the issuance of the warrant was "entirely unreasonable." Therefore, even if Mr. Taylor had standing to challenge the search, and the warrant affidavit did not rise to level of establishing probable cause, the exclusion of evidence obtained during the search would not warranted because the executing officers had the right to rely on the judicial determination that a search was warranted.

## CONCLUSION

For all of the reasons set forth above, Mr. Taylor's Amended Motion to Suppress is DENIED. (ECF #20). IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: May 8, 2025

-18-