IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:24CR155 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | |
| THOMAS TAYLOR, | ) | <u>UNITED STATES' SENTENCING</u> |
| | ) | <u>MEMORANDUM</u> |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, David M. Topefer, United States Attorney, and Assistant United States Attorney, Payum Doroodian, and respectfully submits this memorandum for the sentencing of Defendant Thomas Taylor. For the reasons set forth below and pursuant to the plea agreement, this court should sentence Taylor to a sentence that includes 210 months in custody.

I.       GUIDELINES CALCULATION

On the morning of trial, Taylor requested a last-minute plea agreement which substantially limited his punitive exposure. This agreement between the United States Attorney Office and Taylor provided Taylor with a stipulated guidelines calculation of 40, afforded three levels of acceptance of responsibility, and limited his custody sentence to a range of 188 to 210 months.

The Presentence Investigation Report (PSR) in this case calculated Taylor's total offense level as 42, which includes a +2 enhancement for his Taylor's role as a leader and manager of his drug trafficking operation. Thus, according to the PSR, after three levels for acceptance of

1

responsibility, Taylor is an offense level 39, with a criminal history category of IV, placing him in a guidelines range of 360 to life.

## II.     APPLICATION OF § 3553(a) FACTORS

Considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and characteristics of the offender, a sentence of 210 months is sufficient but not greater than necessary, to reflect the seriousness of the offense, provide just punishment, promote respect for the law, and protect the public.

Taylor's sentence must reflect the nature and circumstances of the offense, specifically, his role in trafficking significant quantities of dangerous narcotics and possessing firearms. For years, investigators have been aware that Taylor was the leader of a major drug trafficking operation within the Northern District of Ohio. The Taylor DTO consisted of numerous members, including Noreece Young, and flooded Ohio streets with millions of blue fentanyl pills, which Taylor mass produced using mechanical and industrial electric pill presses. These industrial presses were capable of producing thousands of deadly pills in a matter of minutes. Taylor ran his drug empire which altered and destroyed countless lives with his deadly narcotics, all for profit.

Although investigators were aware of Taylor for a long time, they were unable to make any significant progress as Taylor insulated himself from directly trafficking narcotics in order to evade law enforcement. Instead, Taylor relied on others to manufacture and distribute the narcotics for him, although Taylor often set up the deals directly first. In 2024, after agents secured a confidential informant with a direct connection to Taylor, agents completed four controlled buys of more than 3 kilograms of fentanyl pills. During the first three buys, Taylor

dropped off the drugs at Noreece Young's house and later returned to collect the money. Young in those instances did not receive any proceeds from Taylor for acting as an intermediary.

During the fourth controlled buy, Taylor was present and executed the transaction directly with the informant. During this recorded buy, Taylor casually revealed that he had numerous kilograms of fentanyl being delivered to him:

> **Taylor listening to a voice message:** be there tomorrow… seven kilos… seven.
> **Taylor** :I got like three 'Migos (Mexicans) but these n*ggas be calling me **….** I got them then I got the other ones coming with the Fetty (fentanyl). They supposed to actually, they supposed to come ……They supposed to come. Um, day 2, for real. I, I can't chalk (steal) them though ….. I can't chalk (steal) them with the Fetty (fentanyl).
> **Informant**: I'm talking how you going talk to them like that
> **Taylor**: Give it to me. Damn I'm keeping that shit. They be playing too much because they, because they send the shit then they, I'm gonna get them bricks.

Later in the same conversation, highlighting his ruthless nature, Taylor described an incident with his Mexican sources who arrived to collect funds, which prompted Taylor to get his gun:

> **Taylor:** Them 'Migos (mexicans) I chalked for the 300 (grand). Them n*ggas end up getting popped. They got knocked. Oh no they got knocked n*gga. **. . .** They did call me at the bar, but it was like he had like call the I was yeah I chalked for the 300. I was getting the bricks from him and this n*gga from New York and shit. So they had like a n*gga, they had like another Mexican and his father and shit. But they the ones who dope it really was and shit. . . ..I used to meet the son at the hotel and he even used to bring the bricks and get the money and shit up.
> **Taylor** I was sitting in the bar one night . . . .I'm sitting at the at the bar. They knock on the door and shit. I'm like we closed come here. I a couple times I don't rec, I don't recognize him 'cause he got his shit. All this shit cut off now shit like we closed. He like no you…..My hammer (gun) in the car though.
> **Taylor**: In the car two Mexicans. I go to the door by the time I get the door now I recognize this n*gga face and shit. I'm like damn this dude. Yeah. So I don't even really know how to play it but I still open it. I'm looking at him. They ain't got it look like they ain't got shit on 'em and shit. Right.
> **Young**: Look hostile?
> **Taylor**: No. I open the door, let him in. They come in and shit. I'm like hold up real quick. I lock him in that bitch. Go to the car, grab the hammer (gun), put that bitch right here. Come back in.
> **Young**: Oh shit, everybody be crunch time now.

After this fourth controlled buy, investigators executed four search warrants that resulted in a substantial seizure of drugs, drug making equipment, and firearms, as shown below:



At the residence where the pill presses were found, agents found Michael Anderson, who lived below where Taylor and his accomplices made fentanyl pills. As reflected in paragraph 34 of the PSR, Taylor orchestrated the murder of Michael Anderson just six days after the search warrants were executed, likely as a means to prevent him from testifying in this case. Thus, given the nature and circumstances of the offense, a significant sentence is warranted.

The sentence in this case must reflect the seriousness of the offense, promote respect for the law, and provide just punishment. A significant sentence is warranted in this case given the Taylor's role in leading a large scale drug trafficking operation that mass produced deadly fentanyl pills. As the leader, Taylor often directed others, used violence to his benefit, and

profited from the pain and suffering of others. Indeed, each year, thousands of Ohioans die from drugs, with more and more dying specifically from fentanyl, as shown below:



In addition, Ohio continues to be one of the leading states most affected by drug overdoses. (*See*, e.g. https://www.cdc.gov/nchs/state-stats/deaths/drug-overdose.html). Thus, although Taylor's drugs are not linked to specific drug overdoses, the effect of the fentanyl epidemic on Ohio is significant and alarming. Taylor's sentence must reflect his involvement in mass producing the very drugs that destroy the lives of countless Ohioans.

Taylor's sentence should also not create any sentencing disparities, both nationally and within this case. The sentence of 210 months also achieves this purpose and accurately reflects Taylor's elevated role when compared to others. Specifically, Taylor's co-defendant, Noreece Young was much less involved, was directed and managed by Taylor, and did not directly profit from Taylor's operation. Yet, Young received a sentence of 180 months custody in this case.

Because Taylor's criminal involvement was substantially higher than Young's, Taylor's sentence must also be substantially higher as well. Accordingly, this court should sentence Taylor to 210 months custody.

## II.     CONCLUSION

For the forgoing reasons, the United States respectfully requests that the Court impose a sentence as described in this memorandum.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:  /s/ Payum Doroodian
    Payum Doroodian (DC: 1035376)
    Assistant United States Attorney
    United States Court House
    801 W Superior Ave, Suite 400
    Cleveland, OH 44113
    (216) 622-3739
    Payum.Doroodian@usdoj.gov

6